The next matter, number 25-1291, Arthur Miles v. Warden Freddy Bowers. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin. Good morning, sorry. Good morning. May it please the Court, Becca Steinberg for Appellant Arthur Miles. With the Court's permission, I'd like to reserve two minutes for rebuttal. Yes, you may. Under the First Step Act, BOP shall provide programming to all prisoners. That obligation is mandatory and applies throughout a prisoner's entire term of incarceration. Then, if a prisoner participates in that programming, he shall earn credits. That requirement is also mandatory and governs unless a listed statutory exception implies, and none of them do. But BOP has promulgated a regulation that is invalid and it does not defend on this appeal that delays programming and credits until a prisoner arrives at his designated facility. And now BOP says that a prisoner can't engage in programming unless he's undergone an assessment, even as BOP delays the assessment until he gets to his designated facility. Counsel, I'd like you to understand at the outset what concerns me, if I might. After the first trial and the sentencing, your client is in custody, it would seem, awaiting a second trial, which will result in another sentence. And so it seems difficult to argue, to use the language of the statute, that he is awaiting transportation to the official detention facility at which the sentence is to be served. It seems to me that the best argument you can make, perhaps, is that he's in custody awaiting two events. One would be the second trial, and also, simultaneously, he is awaiting transportation to the official detention facility. But even if you have those dual purposes, those dual purposes would not seem to meet the requirement of the statute. So this may be a situation that was not contemplated by the statute, but that dual purpose, at least as I see it, subject to the arguments here today, that seems to be a problem for you. So how do you deal with that? Three ways, Your Honor. The first is that the argument was forfeited. It was not passed on below, and BOP raised it only in a footnote, which, as we note in our reply, is not sufficient to preserve that argument. The second point is that, even if there was this period between the first and second sentencing, the majority of the time at issue was after the second sentencing. So even if you have that issue, it doesn't invalidate the rest of our arguments, which indisputably— That's important. I thought—are we talking about a period of 15 months here? Is that what we're talking about? So there's a 15-month period after the first sentencing. A few of those months were between the first sentencing and the second sentencing, but then the majority of that time is after the second sentencing as well. And he's working in this orderly position throughout this whole time? Yes, Your Honor. He's adequately alleged that during this time he was working as an orderly. Yeah. Okay. So there could be, down the road, if this case goes back, an argument about how to treat that period of time between the first sentencing and the second sentencing. There's an argument there about whether that first sentence has commenced. Yes, Your Honor. There could be an argument— And that's just unresolved. But even if we were to take the view that the sentence for purposes of this First Step Act, after the first sentence he had not commenced his sentence, there'd still be issues to decide because the bulk of the 15 months is after the second sentence? Yes, Your Honor. Absolutely. That's very helpful. All right. Thank you. And so he was working as an orderly during this time, so he was participating in what the statute and BOP's program manual define as an evidence-based recidivism production program. The only argument they've given to that is saying it doesn't count because it wasn't after an assessment. I want to be very clear that there are two ways that you can rule for us on this point. The first is to agree with our statutory arguments that an assessment isn't required, and I'm going to go into those in a moment. But the second is to say BOP is violating its statutory obligations because it is required by the First Step Act to provide programming throughout a prisoner's entire term of incarceration. It has not done that. What's that term? Because that's kind of a made-up term, in the sense that commencement, that's a term that's otherwise defined. Term of incarceration is not one I'm familiar with as somehow having some other definition. So where that starts, you could put that at different points, I suppose. I think you would look to that in three ways. Number one is look at the plain meaning. He is incarcerated and that he is in prison. Number two is read that in conjunction with the definition of commence. It would be odd to think that the term of incarceration started at a time other than when the prisoner's sentence commenced. Or the third way, the entire term of incarceration language is in 3621H6. The next subsection, 3621H7, incorporates the definitions in 3635. 3635.4 defines prisoner to include someone who has been sentenced to a term of imprisonment or a person in the custody of the Bureau of Prisons. It's or, not and. So it happens even if they're not necessarily in the custody. And I was just looking at that. This definition didn't come up in the briefing, or at least I don't remember it. But I think it is important because prisoner is the term that they chose to use throughout this provision. Yes, Your Honor. And it is, has this or, as you point out, you don't need to be in the custody of the Bureau of Prisons. Yes, Your Honor. And still talking about the definitions, that same section defines evidence-based reduction program and includes among them a prison job. But it never ties that definition to an assessment either. Correct, Your Honor. And it knew how to tie it to an assessment. Congress knew how to tie it to an assessment if it wanted to, and it didn't. That matters for a few reasons. Number one, the obligations, again, on BOP are mandatory. But number two, there are a number of textual clues that make clear that the programming need not be tied to an assessment to earn credits or for a prisoner to participate. Under this argument, this first argument that you're making about BOP violating its statutory obligation, how does a pretrial detention for which a sentenced person gets credit on sentence, how would that be treated? A pretrial detention under 3585A, the sentence has not yet commenced. So even once they get credit for it at sentencing, which is very, very common. Correct. So you're not saying that it's broad enough to include that? No. And 3585B, which comes right after 3585A, is the reason you get credit, even though your sentence has not yet. And is it your position that as people, so they're sentenced, they're in sort of some kind of state facility as they're awaiting their designation? It's not. I mean, what makes this all odd is BOP is not in charge, often, of the places where these people are going to be as they wait for transfer. That's what makes this whole thing a little bit odd. Is your position that they still have to complete a program at that place that constitutes an evidence-based reduction program, or is it merely the fact that BOP, they just get credit because BOP is not offering them anything at that place? I see my red lights on. Is it okay if I answer the question? I think those are two alternative ways that you could hold for us. Both are met here. But your case presents the narrower question because your person actually did something that he says constitutes an evidence-based recidivism program. Yes, sir. And we don't have to reach what I think is the harder question, which is the person who's willing but there's nothing for them to do, which my experience tells me is a common situation. Yes, Your Honor, you don't have to reach that question, although 3621H says in that circumstance BOP is violating its statutory obligations under habeas, a person should have a remedy for that. Counsel, isn't what your client was doing while in the custody of the Samaritan County facility, it was a kind of work, he was doing some work, and the statute specifically states that that's a qualifying recidivist-type program. Isn't that correct? I mean, it's explicitly covered by the statute. Yes, Your Honor, it is. Well, is that slightly overstated? I mean, that's true, but it also has to be one that BOP says meets certain other criteria, right? I guess my question, based on what Judge Lopez just asked you, is ultimately would there have to be some kind of determination by BOP that this job, given its attributes, was a program that research has shown is likely to reduce recidivism and make him better able to be in the community? Would that decision at some point have to be made? No, Your Honor, because it's not determined on that specific of a level. So, for example, consider GED programming. GED programming as a whole counts for someone who needs a GED. BOP doesn't go and say, these three GED programs count. But we're talking about, I mean, that's the problem here, right? So BOP has designed the program and stamped the program. It's their program. What you're asking us to do, in many cases, is take state programs, whatever they are, and then say, aha, they did this state program, and therefore they get credit. But it seems like the statute has three requirements. It says A, B, and C. C is a long list of things, and it says if it includes any of these. But it also has to have this sort of been shown to be working. So these state programs may be anything. And does BOP, under this, have some role in determining, yes, that's really actually a decent program? So, first of all, BOP might, and that's an argument BOP might raise on remand. Here, the only argument that BOP has raised is that it does not stem from an assessment. They never said that Mr. Miles didn't successfully complete work or anything like that. I'm just making sure I understand the limits. So I understand that point, but I'm making sure I understand the limits. Yes, and BOP's own program manual says that prison jobs count. So it meets the definitions in A and B of the provision. Counsel, I mean, there's an important distinction between being in a position to earn credits, but then there still could be the issue, I guess, picking up on what Judge Afame just said. The question is whether you actually then get them. And if the Bureau of Prisons were to determine that this work program that your client was participating in really did not meet their requirements for a recidivist program, they could decide we're not going to give you those credits, not because of the timing of when you were doing it, just because it doesn't meet our requirements. They could still do that, could they not? It depends on the path of the decision that this court writes, and I want to explain why for a minute. So if this court says you have to participate in programming, then yes, they theoretically could do that, although that's inconsistent with what their practices are at the designated facilities where they don't make that determination at all. So it would be somewhat odd to say that they could do that in this circumstance when as a matter of practice, once a prisoner gets to his designated facility, they say anything counts. But the second thing is that if you say BOP has an obligation to provide programming throughout a prisoner's entire term of incarceration, BOP has violated that statutory obligation. And so then the question is what is the remedy? That's not an argument that they could make because that does not change the fact that they have violated their obligation, and that is the grounds for giving Mr. Miles a remedy in this circumstance. Thank you, counsel. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning, Your Honors. Michael Fitzgerald for the appellee. Time credits under the First Step Act are earned and conditional. They are not immediate and automatic. In his opening brief, Mr. Miles argued that once a prisoner's sentence commences, credit accrual must begin. I understand, Mr. Miles, to now have conceded or at least agree that in order to be statutorily entitled to time credits under the First Step Act, a prisoner must successfully participate in EBRRs or PAs. That agreement should resolve this appeal because Mr. Miles did not participate in EBRRs or PAs while at Marion County Jail. I understand, Mr. Miles, to have three. How do I know that? I mean, he did have a job, or at least it's alleged he had a job. Do you agree with that? That's right. And why is that not an evidence-based recidivism reduction program? Sure. So Section 36353C11 provides that an EBRR may include prison work. It doesn't state that all types of prison work qualify as an EBRR, and that makes sense because, by definition, an EBRR would, Your Honor, as you were pointing out before, need some type of evidence-based determination that the particular— Okay, so this gets to the core of what I think where your argument doesn't hold together. Why can't you—putting aside—all right, an assessment's done at some point. Prisoner shows up and says, Hey, while I was in Marion County Jail, I did this program. Here's some information about it. You go and you get that information, and you make an evaluation that that's an EBRR. Why can't you credit the person? What creates this dark-line bar that you say no accrual until assessment when you can have the assessment, you can figure out what they did before, you can match them up and decide whether to credit it, where the definition of EBRR does not tie to assessment? A couple of responses, Judge Afram. So I do think that in that type of circumstance, BOP could award time credits, and in certain cases that is what happens. A prisoner says, Here's my proof of what I did. The BOP looks at whether it's sufficiently equivalent to the EBRRs or PAs that they've approved and award time credit. There's nothing prohibiting the BOP from doing that. The government's position has been that the statute does not require BOP to award time credits in that situation because there hasn't been an assessment yet, and I can explain why we think an assessment is a condition precedent or a necessary predicate to the earning of time credits. Counsel, what about they assert in their brief that the Bureau of Prisons' own practices belie this notion that you cannot get these earned time credits until you have actually participated in it and successfully completed a program that is blessed by the risk assessment program. As a matter of practice, if you are willing and able to participate in such a program but there's a long waiting list to get in, you're still going to accumulate that time. I mean, that very practice undermines your claim that there has to be a risk assessment done before you can begin to accrue these credits. Is that a factual matter? Is that an inaccurate characterization of the Bureau's practices? It's not an inaccurate characterization of the BOP's current practice. Where I disagree with Your Honor's point is that it's never been the government's position that you can't get credits for even absence of successful participation. The government's point is simply that the statutory entitlement, the mandate, doesn't kick in absent participation in EBRRs or PAs. Are you saying there's no rule then? Your position is not that we have a rule that you must have an assessment? We just arbitrarily say you need an assessment but you don't?  Does everyone need, under your position, does everyone need an assessment before any program they've finished count as giving them credits? You need to be at your BOP-designated facility. It is true that BOP, while you are completing the intake and the risk assessment, BOP, so long as you do that within 28 days, BOP will treat you as considered. The basis for having to be at the facility is your regulation that defines commence to be when you arrive at your designated facility. That's correct, Your Honor, but I think that's entirely consistent with the First Step Act. Let me give just a couple points of context as an example for why that's so. First, you look at not only the order of operations set out by 3632 in general, but 3632D specifically expressly states that time credits are provided by the system. They're not provided pursuant to some other mechanism, and so you have to earn them pursuant to that statutory system. But all of these things are going to play out. This is, I guess, what I don't understand. Why does this not permit using all of the system and the assessment to then make judgments about programs that someone did, except during the term of their incarceration, to figure out whether they meet your goals of having this done? Like why do you need the bright-line bar, nothing you did earlier can count? I don't see where the bright-line bar comes from. I understand why you want the assessment. It helps make evaluations. But where do you come to we need it before you can do anything productive? So the only, I guess, quibble I have about Judge Aframe is that the BOP's position is that it's required and needed. The BOP does and can overtime credits prior to the assessment. And nobody's going to be released until they have an assessment because they have to be assessed as low or minimal. So all we're doing is saying what goes in the bank, and what's the problem with putting credits in a bank where someone did do something productive, you then later, after you assess them, can make a judgment about that, say that's a good thing, we'll give you the credit, so that when you get to the end of the line and you've been assessed as minimal or low, you can go. I hesitate to say that there's a problem with that, Your Honor, but let me make two points. One is the BOP often, as Your Honor noted before, does not operate the state-operated jails that are in Marshall's custody. The BOP doesn't have contracts with those facilities, so it's difficult or sometimes impossible for the BOP to actually track and verify whether they've actually participated in programming at those facilities. The second point I'd say is, again, the BOP's view is that the statute just doesn't require it, regardless of if it would be problematic or feasible or not. And let me give you an example as to support our view that under the statute, an assessment is required in order to trigger mandatory entitlement. Section 3632D4B1 prohibits prisoners from earning time credits before the date of enactment of the FSA. Romanette 2 is what prohibits prisoners from earning it prior to the sentence commencing, but Romanette 1 refers to prohibiting prisoners from earning before the enactment of the FSA. On Mr. Miles' interpretation, on his logic, there would be a standing mandatory obligation to award time credits after the date of the enactment of the FSA, regardless of if there is a risk and needs assessment. There would be a standing obligation pursuant to Mr. Miles. I don't understand that logic at all. So Mr. Miles argues that under 3632D4B2, the provision that provides prisoners cannot earn time credits prior to the commencement of a sentence. He's arguing that given that language and then the mandatory language in 3632D4A, that as soon as a prisoner's sentence commences, you have to be able to start earning time credits. The negative implication of D4B2 is that you can't earn them before a sentence commences, so you have to be able to start earning them after the sentence commences. And my point is that D4B1 has a very similar prohibition. You can't earn time credits before the date that the FSA was enacted, and so by Mr. Miles' logic, you have to be able to earn them after that, regardless of if an assessment has occurred. That is clearly incorrect. Congress contemplated that you would need a risk assessment in order to be entitled because they recognized there was going to be a phase-in period. It doesn't make sense. They're getting at two problems. Problem one is prior to the date of the enactment of this subchapter, what we don't want is the number of people in BOP to rush forward and give us their curriculum vitae for the entire time, right there, transcript, for the entire time we've been here, and then have to judge whether these are ERRB programs. That's too much. Administratively, that will overwhelm the system, so we're going to start it from the day we enact this thing. That's what problem one is getting at. Problem two is getting at, and we're not going to count things that are done in pretrial detention. And so they've made those two decisions. And now, and then you have H-6 that says, and after you start your incarceration, programming shall be available to you from that day forward, and you are a prisoner because you are here pursuant to a conviction of a federal offense, and you did something that's an ERRB program, you say, and so, therefore, I shall earn credits for those. Your Honor, my response to that is, under D-4B1, on the day after the FSA was enacted, prisoners were still prisoners under the statute. Under Mr. Miles' view, H-6 would require BOP to provide programming the day after the enactment of the FSA. And my point is that Congress recognized that during that period, after the enactment of the FSA and before the risk and needs assessment system was stood up, the BOP does not have to provide time credits. Even if somebody participates in EBR programming during that ramp-up period, they only met. Did you provide time credits for that? I never thought about that time. It was definitely a period when the law is enacted, people are at BOP, they're doing productive things, you haven't stood up the assessment system. Did you credit them for those programs? We did, but multiple courts have held that we were not required to. That's 3621H-4. Congress provided that during that phase and period, the BOP may, but not must, provide time credits. And my only point is that if it's discretionary during that phase and period, by the same logic, it has to be discretionary from the period post-sentencing pre-designation. Counsel, I've got to prolong this. Of course. Opposing counsel can disabuse me of this notion if it's incorrect, but my understanding is that their basic position is to comply with the First Step Act from the time that the sentence commences. Prisoners are supposed to have an opportunity to participate in programs that will garner them these earned time credits. Now, if they participate in such programs and they were eligible to do so because the sentence had commenced, subsequently, if you do this risk assessment and make a judgment that this program that they participated in before the risk assessment was done does not meet the Bureau of Prison Requirements that would then actually result in an application of the credits, you can do that. I don't understand them to be arguing the contrary. They're basically saying their client should have the opportunity from the very time that the incarceration begins to earn those credits. The First Step Act requires that. But that doesn't mean, again, that after the assessment is done, you can decide, no, no, that work that was done in the Marion County Prison, that was make work, it didn't in any way advance the objectives of the First Step Act. You can still do that. Do you understand them to be making the argument? And if so, what's wrong with that? I think they, I mean, opposing counsel can correct me if I'm wrong, but I think they are actually arguing that, no, on the back end, the BOP can't, at least in this particular circumstance, say, no, that work isn't sufficiently comparable to the EBRR we've approved. I think their position is that work means work, and that's an EBRR. I would have three very short responses to, I guess, the overarching point, Judge Lopez, that you made is that BOP, they at least have to have the opportunity, like, right once their sentence commences, and why that's not correct under our reading of the statute. One is, and I won't believe the point, BOP often does not control or have the ability to force state-operated facilities to offer that type of programming and doesn't have the ability to track it either. Two is the authority they cite for requiring the standard requirement to provide programming immediately upon sentence commencing, that's 3621H6, but that reading renders, creates internal inconsistencies within 3621H6 itself. 3621H6 refers to providing programming according to criminogenic needs. That can't be done. You don't know the needs until the assessment has occurred. It also refers to PAs. By definition, you can't offer PAs until a risk assessment has occurred. And then also with respect to the definition of prisoner, technically the definition of prisoner would include people who have been sentenced who are out on bail or conditions prior to their designation and arrival at their BOP-designated facility. And clearly the BOP wouldn't be able to provide programming to those prisoners who aren't even in a detention facility. And so we respectfully disagree with the notion that they have to be able to start, have the opportunity to participate in programming immediately upon sentencing, but I guess the broader or the more fundamental response to your question, Judge Lopez, is that, yes, we do think that BOP in all events would retain the authority to decide whether what you did actually qualifies as an EBRR or PA because, of course, the real innovation of the FSA was not to simply reward participation reduction recidivism programming. It was to be more methodical about it and to pair them with programming that has been determined to actually work. And so if the goal was to just reward participation in programming of any kind whatsoever, then why wouldn't you award credit to people who participate in programming during pretrial detention? Thank you, counsel. Thank you. I'm sorry. Of course. So I'm beginning to think that the Bureau's position, as you've articulated today, is that the assessment is not a condition precedent. It's more a condition subsequent. And so if that characterization is good enough, I need to know is your position that BOP has an obligation when doing the assessment to consider whether alleged programming that took place prior to that point would qualify or that it has no obligation whatsoever? Our position is that it does not have an obligation. That's what I thought you started with. So we still have to wrestle with that issue. That's true, Your Honor. I guess the last thing, if Your Honor is permitting me to say on that point, is one way to resolve this is the Third Circuit very, very recently issued a procurium called Akshakpa that addressed this very same issue, the question about whether or not you have to sign. Do we have that? I'm afraid I didn't read it. Do we have that? No, Your Honor. This was a couple of weeks ago. And you're going to submit it in a 28-J? Yes, Your Honor. And in that case, the Third Circuit, admittedly in a procurium, unpublished procurium, said that we don't have to decide that harder issue because there isn't evidence that the particular petitioner actually participated in an EBRR that the BOP had offered and approved. It was the same type of situation of a state-run facility as opposed to a BOP facility. And so in that case, they decided not to reach that harder issue of when does it actually have to, because I think both at a bare minimum and in all events, you have to have participation in an EBRR or PA. Thank you, Your Honors. Thank you, counsel. At this time, would counsel for the appellant please reintroduce herself back on the record? She has two minutes. Thank you. Becca Steinberg for Appellant Arthur Miles. Two points, Your Honor. The first is that BOP has talked a lot about whether it has to give credits, but it has not talked at all about whether it has to give programming. Under 3621H6, it must give programming throughout a prisoner's entire term of incarceration. At Marion County Jail, Mr. Miles did everything that he could. He worked. He never refused to participate in any programming. So therefore, one of two things is true. Either, one, the work counts as programming, in which case he's entitled to credits, or, two, he didn't have access to any programming because BOP violated its statutory obligation to provide him with that programming. In that case, his habeas remedy is an equitable one, that to put him back in the situation he would have been in, had BOP complied with its statutory obligations to provide programmings, means that he's entitled to credits. How can they provide? It's the obvious question. How can they actually provide programming in a state facility? They can't do that, right? It's our understanding that prisoners are held in these state facilities pursuant to BOP contracts. So BOP can hold them. That's not true. They're held to a marshal's contract. To a marshal's contract. So the marshals aren't part of this whole thing. So it becomes quite, that question is a good one in the sense that, I don't know, BOP is not involved until they get you, which is when you arrive at that facility. So they designate you. That all happens. But you are in marshal's custody until that point. So it is kind of a strange idea, except to say that, like, whatever's available, if you take advantage of it, and then, you know, kind of nunk-pro-tunk after we've done our assessment and we look at the evidence you put forward to us about what you did, and it's similar to what we offer, we should give credit. I follow that argument. But I have trouble with that BOP is, like, you know, this is not a well-drafted statute, which is the problem. But the BOP is not there. So I don't know how that would work. If I may respond. Congress, in the First Step Act, imposed an obligation on BOP throughout the entire term of incarceration, and in the First Step Act, Congress said that starts before a prisoner gets to the BOP facility. It might be difficult for BOP to comply, and BOP might need to figure out how it can comply. But we don't have to deal with, at this point, your case is really not a lack of opportunity. It's I did a thing, and I have not been credited for it. Correct. Mr. Miles did a thing. Correct. Mr. Miles did do a thing. And the only reason BOP, until today, has argued that that doesn't count is because he hadn't undergone an assessment. And that's what we have here. Yes, Your Honor. So just to seek an answer to the question that I probably posed to the wrong party, so I will pose it to you. Do you acknowledge that the Bureau of Prisons, after it does conduct a risk assessment, it could decide that the work program that your client participated in at that Marion County facility does not meet their requirements? And although, as a matter of timing, yes, he could have earned credits, but because the program he participated in did not meet the requirements, we're not going to credit him with the credits. Could they do that? It depends, Your Honor, and I want to be very clear on why it depends. The reason it depends is because then Mr. Miles said, well, I did everything I could. If Mr. Miles could then show that there was nothing else. He did everything he could, but it's a phony program, and we don't think it accomplishes any of the objectives of these kind of programs. So we're not going to give him credit for it. If there were no other programming that he could have done at all, then BOP has violated its statutory obligation. Is that the next case, though? That is the next case. That is not it. Because this case gets resolved by saying requiring what Judge Howard called a condition subsequent or precedence of a risk assessment isn't required. There could be a risk assessment later, so they rule that there has to be a risk assessment first. If that's their reason for denying credit, that's an error. That's the error that Judge Stern's order makes. We have an argument to make that we had a good program and that we don't know how that's going to be resolved. Is that right? Yes, Your Honor. Okay. Thank you. Thank you. Thank you, Counsel. That concludes argument in this case.